(21 App. Div. 25.)

## BENNETT v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. LIABILITY OF MASTER—TORT OF THIRD PERSON.

    A railroad company is not liable to an employé for an injury caused by the opening of a switch by a stranger.

2. SAME—ASSUMPTION OF RISK.

    Employés of a railroad company, working on a construction train, assume the risk incident to the service caused by the necessarily incomplete character of the implements.

3. SAME—QUESTION FOR JURY.
    Whether the omission to provide a target for a switch during the con-
    struction of a railroad was negligence rendering the railroad company liable
    to an employé injured thereby, was a question of fact for the jury.
    Hatch, J., dissenting.

Appeal from trial term, Suffolk county.
Action by Charles M. Bennett against the Long Island Railroad
Company.   From a judgment entered on a verdict, and from an or-
der denying a motion for a new trial, defendant appeals.   Affirmed.
Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

William J. Kelly, for appellant.
Theodore D. Dimon and George C. Case, for respondent.

BRADLEY, J.   On October 17, 1895, the plaintiff was on a train,
consisting of an engine and caboose, which left Amagansett for Mon-
tauk, in the county of Suffolk, on what was known as the Montauk
Extension Railroad, and intended as a branch of the defendant's
railroad.   The distance was 10 miles.   The train was run that way
backwards, the caboose preceding the engine.   When it had pro-
ceeded about five miles, and reached Napeague Beach, it ran into an
open switch and against a flat car loaded with rails.   Immediately
before the collision the plaintiff jumped from the caboose, and re-
ceived personal injuries, which he charges were attributable to negli-
gence of the defendant.   He was justified, by the situation as it ap-
peared, in jumping from the caboose.   The plaintiff was a carpenter,
in the service of the defendant.   His work was at Montauk in fitting
up cars and doing other work for the defendant, in which he had
been there engaged for upwards of two weeks.   He resided at Ama-
gansett, and during that time went daily to Montauk in the morning,
and returned in the evening.   He was transported both ways upon
this railroad, which was not yet entirely completed between those
two places, and was not operated with passenger trains until in De-
cember following.   The theory upon which the action was tried and
submitted to the jury was that the plaintiff was an employé of the
defendant, and therefore the defendant was not liable to the plain-
tiff for the consequences of the negligence of any other of its em-
ployés.   There was neither any lock nor signal target on the switch.
Such omission furnished the fact which was submitted to the jury
upon the question of defendant's negligence.   In that respect the
court charged the jury that it was for them to determine whether it
was reasonable for the defendant to have provided a lock for the
switch, and whether its duty was to have provided for it a signal
called a "target," and that if, under the circumstances, it was the
duty of the defendant to have provided those appliances, and its fail-
ure to do so was the cause of the accident, the plaintiff was entitled to
recover.   The defendant's counsel excepted to that portion of the
charge.   He had also taken exception to the denial of motion to dis-
miss the complaint.

The duty of the defendant to have furnished the switch with a
lock and signal target would have been clear if the road had been

completed, or if it had been operated for the purposes of traffic and travel. But it had not reached that stage of completion or use. In that fact rested mainly the defense. The defendant gave evidence tending to prove that it was not usual to have either locks or signals on switches during the construction of railroads, for the reason that they were not deemed necessary, because the construction trains, when properly moved, were run at so low a rate of speed that the condition of a switch could be seen in time to check the movement of them on approaching it. This precaution was not observed in the movement of this train. It was going at the rate of 25 to 30 miles per hour. On that subject the court charged the jury that, if they found that the train was running too fast, and it was the cause of the accident, that was the fault of the engineer, the fellow servant of the plaintiff, for which the defendant was not liable. There was evidence to the effect that the side track diverging from the place where the switch was located was a temporary one, placed there for the storage of cars in the course of the construction of the road, although it had since remained. There was no defect in the switch. It was movable back and forth by means of a lever which was raised from about a horizontal position, and thrown over from one side to the other to open and close the switch, to do which required the application of some considerable force. The evidence on the part of the defendant tended to prove that the switch was closed when this same train passed over the road the evening before in going west from Montauk to Amagansett, and that the movement of the engine and cars upon the road could not have the effect to open it, and such, apparently, would seem to be the fact. How it did get open, as it was on the morning in question, does not appear, although there was some suspicion, indicated by the evidence of some of the witnesses, that it was done by an offended Italian, who, as witnesses testified, had made some threat with which such act by him would have been consistent. Upon that subject the court, upon request, charged the jury that, if the "switch became unsafe through the felonious act of a third person," the plaintiff could not recover. The court, also upon request, charged the jury that, if the switch was left open by a fellow servant of the plaintiff, he could not recover. This relation would include any employé of the defendant. It must, in view of the evidence, be assumed that the switch was opened and left open by some person. The defendant is chargeable only for its own acts or omissions. It is not liable for the consequences of the acts of others, or for causes not within its control. It is not chargeable with the act of opening the switch by a stranger. Curtis v. Railway Co., 18 N. Y. 534, 536. It would seem to follow that the jury were not fairly permitted to find in support of the action that the open switch, at the time in question, was attributable to any fault or negligence of the defendant.

For the purposes of the present case, the omission of the defendant to supply a signal target for the switch is the fact which requires consideration. The duty resting upon the defendant to seek to supply suitable means, machinery, and appliances for the use and protection of its employés required it to use reasonable care in providing

structures to that end. The purpose of a target on a switch is to indicate its position to the engineer of the train approaching it, and to enable him to see it in time to hold up and avoid any calamity, if it is necessary to do so. The conclusion was permitted in the case at bar that, if this switch had been so supplied, the accident would not have occurred. The facts that the road was uncompleted, and that this was a construction train, are circumstances entitled to consideration. The equipments may not be supposed to be as complete during the progress of construction as they are when the road is finished and inspected with a view to its use for general purposes. Until then the hazards, or many of them, in running construction trains for the purposes of the work, are incident to the service of the employés, and come within those assumed by them. Brick v. Railway Co., 98 N. Y. 211. Those engaged in the work, although not at the same kind of service, are co-employés, and the hazards resulting during its progress from want of due care may be attributable to the negligence of co-employés. Filbert v. Canal Co., 121 N. Y. 297, 23 N. E. 1104; Arnold v. Canal Co., 125 N. Y. 15, 25 N. E. 1064. But this rule is not applicable to implements and materials to be supplied and used. in construction and equipment of the road. They are furnished by the master. The appliances for a switch essential to the safety of the operation of the road by employés call upon the master for the exercise of reasonable care to supply them with that view. Whether or not the omission to provide a target for the switch was, under the circumstances, a failure to exercise such care, was a question for the jury. It may be that it was not usual to make use of such targets during the construction of railroads. And it may be that, if this engine and caboose had been run at the low rate of speed contemplated by the defendant, there would have been no danger of injury from the open switch. But assuming that the negligence of the engineer contributed to the result does not relieve the defendant if its negligence also co-operated with that of the employé in producing it. Ellis v. Railway Co., 95 N. Y. 546; Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575. It may be observed that the inference was warranted by the evidence that the roadbed and its superstructure from Amagansett to beyond the place of the accident was substantially completed at the time in question. And, while the case is not free from doubt, we think the conclusion of the jury had the support of evidence. None of the defendant's exceptions were well taken.

The judgment and order should be affirmed. All concur, except HATCH, J., dissenting.

HATCH, J. I dissent upon the ground that, as the road was uncompleted, and the switch in use was such as was ordinarily in use upon railroads in process of construction, negligence cannot be predicated upon the absence of a target upon the switch, as none was expected or required in the operation of the road in its uncompleted state.