Syllabus.

**Wytheville.**

SOUTHERN RAILWAY CO. V. BLANFORD'S ADMINISTRATRIX.

June 14, 1906.

1. PLEADING—*Declaration—Duplicity—Demurrer.*—The fact that a declaration in tort states two causes of liability in the same count does not render it demurrable. In the case at bar, the declaration is sufficiently definite to apprise the defendant of what is claimed to be the negligence alleged against it, and is in other respects sufficient.

2. EVIDENCE—*Judicial Notice—Switch Lights.*—It is a matter of common knowledge, of which courts will take judicial notice, that the maintenance of switch lanterns or targets at railroad sidings, such as the one here in question, tends to promote the safety of employees of the company and of the traveling public.

3. RAILROADS—*Negligence—Proximate Cause—Two Theories—Question for Jury*—There being evidence tending to support both theories, it is proper to leave it to the jury to say whether an injury was proximately caused by the negligence either of defendant's servants in failing to set and lock a siding, or of the defendant in failing to provide proper switch lights.

4. RAILROADS—*Switch Lights—Contributory Negligence—Assumption of Risk.*—If a railroad engineer continues, without complaint, in the employment of the company, after knowledge that it has failed to provide proper switch lights or targets at its sidings, this is not contributory negligence, but assumption of risk, the doctrine of which as to railroads has been abolished by the Constitution and statutes of this State.

5. RAILROADS—*Switch Lights—Contributory Negligence—Rules—Obedience.*—Although an engineer may know that no switch lights are provided by the company, it is not negligence for him to run over switches at a high rate of speed, as he has the right to assume that the rule of the company has been complied with which requires all switches to be set for the main line and locked.

6. TRIAL—*Inconsistent Positions—Railroads—Switch Lights.*—Where it is insisted by a railroad company, throughout the trial of an action for the death of an engineer by running into an open siding at night, that it is safe to operate the road at night without switch lights or targets at sidings, it cannot have the jury instructed, as a matter of law, that it was the duty of the engineer to approach such sidings carefully and with his engine under control, and if, in consequence of his failure to do so, the injury complained of was inflicted, they must find for the defendant company.

7. INSTRUCTIONS DIRECTING VERDICT—*Partial View of Evidence.*—It is error to give to the jury an instruction containing a partial statement only of the facts predicating contributory negligence on the part of the plaintiff and concluding with a direction that, if they find such to be the facts, they should find for the defendant. An instruction so concluding should submit to the consideration of the jury all of the facts and circumstances tending to prove or disprove such negligence.

8. EVIDENCE—*Comparing Methods—Railroads—Switch Lights.*—For the purpose of charging a railroad company defendant with negligence in not equipping its road with switch lights, it may be shown in evidence that such lights are used on other portions of defendant's road and also by two other railroad companies operating in this State. It is proper for the jury to know what sort of appliances are in common use in a business of the same kind.

9. EXCEPTIONS TO EVIDENCE—*Waiver—Appeal and Error.*—Where a party excepts to the introduction of evidence which is illegal, but subsequently introduces the same evidence himself, or evidence to the same effect, he will be deemed to have waived his exception, and cannot assign it as error on appeal or writ of error.

10. EVIDENCE—*Examination of Witness—Cross-Examination—Collateral Facts—Testing Accuracy.*—Where it is alleged that the injury complained of was inflicted in consequence of the neglect of a particular witness to set a railroad switch for the main line and lock it, and the witness is offered by the defendant to deny the allegation, he may be asked on cross-examination if he had not a short time before the injury complained of made a similar mistake in setting a switch to that (now) alleged—this for the purpose of testing his accuracy, veracity and credibility. Questions of this nature may frequently be asked of a witness himself for the purpose aforesaid, when the fact sought to be elicited could not be established by another witness because the issue raised would be collateral. For discussion of this difference see the opinion of the court.

11. VERDICTS—*Conflicting Evidence.*—Where the evidence in an action at law is conflicting, but there is sufficient evidence to support the finding of the jury, their verdict should not be disturbed.

Error to a judgment of the Circuit Court of Brunswick county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*A. P. Thom, W. L. Williams, E. R. Turnbull, Jr.,* and *R. T. Thorp,* for the plaintiff in error.

*Buford, Palmer & Eggleston,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment in favor of the administratrix of George T. Blanford, deceased, against the Southern Railway Company for the sum of $10,000, with interest from the date of the verdict of the jury, as damages for the death of Blanford, caused as alleged by the negligence of the defendant company.

Blanford was a locomotive engineer on the Atlantic and Danville Division of the defendant company, and received injuries from which he died by reason of running into an open switch on the night of the 23d of April, 1904, within the company's yard limits at Lawrenceville; the train upon which he was employed colliding with certain freight cars which had been at an earlier hour of the night placed by other employees on a side track leading from the main line of the railroad to the Lawrenceville Manufacturing Company. The collision occurred

just after the train being run by Blanford had left the station at Lawrenceville on its western trip to Danville.

The declaration contains but one count, and alleges the liability of the defendant company to the plaintiff's intestate upon two grounds—first, because of the fact that the switch leading into the side track at Lawrenceville was left open by the employees of the defendant company; and, second, because the defendant company was guilty of negligence with respect to its common law duty in failing to provide a reasonably safe roadway for the plaintiff's intestate while in the discharge of his duties as an engineman—that is to say, the company had been negligent in its failure to have a switch lantern upon the switch on its yard at Lawrenceville.

The action of the court in overruling a demurrer to the declaration is assigned as error.

We are of opinion that there is no merit in this assignment. The declaration is sufficiently definite to give the defendant company notice of what was claimed to be the negligence alleged against it, and fully measures up to the requirements of a declaration in such a case. The fact that it states two causes of action in the same count does not render the declaration demurrable. *N. & W. Ry. Co.* v. *Ampey*, 93 Va. 108, 25 S. E. 226; *Kimball, &c.,* v. *Borden*, 95 Va. 203, 28 S. E. 207.

The evidence tended to prove that the switch in question was used about 7 o'clock in the evening of the day prior to the time Blanford was injured by a freight train designated as 2d 64, and that it was not again used by anyone on the business of the company until after Blanford had been hurt; that the rules of the company (as to which there was no controversy) required that after a side track had been used the switch should be "thrown" for the main line; and that after this collision it was found that the switch, which gave no indication of having been

tampered with, was set and locked for the side track, which could not have been accomplished except by some person using a switch key. The evidence discloses no fact showing that a switch key was in the possession of any person but the employees of the company. It further appears, and in fact is not controverted, that the last use made of the switch in question was by the employees of the company on train 2d 64, and that according to the rules of the company it was the duty of one S. W. Simmons, a brakeman on train 2d 64, to set the switch for the main track after the use of it by his train about 7 o'clock in the evening prior to this accident, which occurred about 1:30 o'clock that night. The theory of plaintiff's case, therefore, is, that the switch was displaced by the brakeman, Simmons, and that notwithstanding this the accident would not have happened if the defendant company had provided at the switch a lantern (known as a "target"), which would have served as a warning to Blanford that the switch was not set for the main line, and would have given him an opportunity to slow up or stop the train and avoid the accident.

Of the instructions given for the plaintiff three (Nos. 1, 3 and 4) were objected to, and the overruling of the objection is assigned as error.

Instruction No. 1 is based upon the idea that the defendant was negligent in not providing a switch lantern, and that the want of a switch lantern was the proximate cause of the accident; No. 3 deals with the alleged negligence of the employees of the company in so leaving the switch open as to cause the accident complained of, and told the jury that if they believed from the evidence that the switch was negligently left open by the employees of the company the plaintiff was entitled to recover; and No. 4 deals with both the alleged negligence in leaving the switch open and the failure to provide a switch light, and told the jury that if they believed from the evidence

that the defendant was guilty of negligence in either not placing the switch properly or in the failure to provide a switch lantern or target, they should find for the plaintiff, unless they further believed from the evidence that the plaintiff's intestate was himself guilty of contributory negligence, which concurred at the time in causing the collision in which he received his injuries. The objection urged to these instructions is that there is not sufficient evidence upon which to rest them, and that the evidence does not tend to show that the omission to provide the switch light was the proximate cause of the accident.

There was evidence, as we have remarked, tending to prove that the switch could not have been left as it was at the time of this accident without the neglect of the employees on train 2d 64 to properly set it before leaving that point, as required by the rules of the defendant company, and there was also evidence tending to prove that it was necessary and proper for the defendant company to have provided a switch lantern, or target, at this switch wrongfully set at the time of the accident. Besides the evidence tending to prove this last proposition, it is a matter of common knowledge, of which the courts will take judicial notice, that the maintenance of switch lanterns or targets at railroad sidings, such as the one here in question, tends to promote the safety, not only of the employees of the railroad company, but of the traveling public, and the courts have the right to take judicial notice of the result of the general experience of society, as shown by adjudged cases and treatises of text writers. *Richmond, &c., Ry. Co.* v. *Richmond, &c., Ry. Co.*, 96 Va. 670, 32 S. E. 787.

It was plainly a question for the jury on the evidence in this case to determine whether or not the accident resulting in the death of Blanford resulted proximately from the negligence of the defendant's employees on train 2d 64 in failing to properly set the switch in question before leaving it; and it is equally

clear that, upon the evidence before the jury and for the further reason that we have stated, it was the province of the jury to determine whether it was the duty of the defendant to have provided a switch light, and whether if this duty rested upon the company, its failure to provide the switch light was the proximate cause of the injury to Blanford.

We are, therefore, of opinion that the court did not err in giving instructions Nos. 1, 3 and 4.

The fourth assignment of error is to the refusal of the court to give instruction "H" on the motion of the defendant company. This instruction told the jury that even if they found from the evidence that the defendant company was guilty of negligence in not providing its switches with lights, still if they further believed that Engineer Blanford knew of such failure on the part of the company and had continued in its employment for a long period of years after such knowledge of the general habit of the company not to have switch lights, and for the period of nine months after knowledge that no light was on the switch in question, without calling the attention of the company to it or making complaint, or receiving a promise that the switch would be provided with a light, then such conduct on the part of Blanford amounted to contributory negligence, and the plaintiff could not recover in this case.

This instruction is plainly in conflict with section 162 of the Constitution and section 1294k of Va. Code, 1904. The language of the Constitution on this point is: "Knowledge by any such railroad employee injured of the defective or unsafe character or condition of any machinery, ways, appliances or structures shall be no defense to an action for injury caused thereby"; and that of the section of the Code referred to is: "Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways, appliances or structures of such corporation shall not of itself be a bar to recovery for any injury or death caused thereby."

. In support of this instruction but one authority is cited—viz: *Railroad Company* v. *Allen,* 13 So. 112, 20 L. R. A. 458, decided by the Supreme Court of Alabama in 1892 under a statute entirely different from ours just quoted, and is not, as it appears to us, a case having any bearing whatever in support of the instruction under consideration. The facts hypothetically stated in the instruction would not have constituted contributory negligence, but at most would have amounted only to an assumption of risk.

In *Railway Company* v. *Cheatwood,* 103 Va. 368, 49 S. E. 489, it was declared that the defense based on the doctrine of assumed risk has been by our statute and the Constitution abolished, but not the defense of contributory negligence. In that case the two defenses are distinguished, and we deem it unnecessary to repeat here what was there said. See also 1 Labatt on Master and Servant, sec. 305, *et seq.*

The refusal to give defendant's instruction "I" is assigned as error. This instruction sought, as did instruction "H," to place before the jury the theory that knowledge on the part of Blanford of the failure on the part of the company to provide a switch light and his continuance in the employment of the company for a period of about nine months after knowledge of the fact that no light was on the switch in question, constituted a good defense to this action, and went further to tell the jury that this absence of a light created a dangerous situation at this switch, and that if Blanford knew of such dangerous situation it was his duty to approach the dangerous point carefully and with his engine under such control as would have enabled him to avoid the danger which might be lurking there; but if the jury believed that he did not do so, but was approaching this point at the rate of twenty-five or thirty miles an hour, and that was too fast for him to escape the danger when he could see it, then Blanford was guilty of contributory negligence, and the plaintiff could not recover in this action.

We have been wholly unable to find in this record—indeed, we are pointed to none in the petition for this writ of error— any evidence tending to prove that Blanford was guilty of any act of negligence, unless it be that he remained in the defen-- dant's service with knowledge that the switch light had not been provided.  As to his remaining in the company's employ after knowledge that no switch light was used at the point in question, enough has been said.  It is true that J. R. Wright, the conductor on the train run by Blanford as engineman on. the occasion of this accident, testified that they were using a speed of about twenty-five miles an hour; but he also says the train was going at its usual rate of speed.

It is not controverted that the rules of the company required the switch to be set and locked for the main line, and plainly Blanford, even if his train had been running at a high rate of speed, had a right to rely on the rules of the company being complied with.  Moreover, it has been insisted throughout this case by the defendant company that its methods in providing a safe roadway upon which its employees could work were ade- quate for their safety.  It would, therefore, have been error to have told the jury, as a matter of law, as was the effect of instruction "I," that it was Blanford's duty to approach the dangerous point—to-wit: this open switch—carefully and with his engine under such control as would have enabled him to have avoided the danger which might have been lurking there, etc., and that if he did not do so the jury should find for the defendant.

The instruction is open to the further objection that it told the jury, as a matter of law, that the facts stated therein con- stituted negligence, and that if they found these facts to be true they should find for the defendant, and this, too, on only a partial view of the evidence.  It has been over and over held by this court, and is now a settled rule of law, that in deter-

mining the question of a decedent's contributory negligence, and, in fact, the contributory negligence of any plaintiff, in a case like this, all of the facts and circumstances of the case tending to prove or disprove such negligence should be considered by the jury, and that a partial statement only of the facts predicating contributory negligence, concluding with the direction to the jury that if they find such facts to be true they should find for the defndant, is erroneous. *Newport News, &c., Co.* v. *Bradford,* 99 Va. 117, 37 S. E. 807; *N. & W. Ry. Co.* v. *Cromer,* 99 Va. 763, 40 S. E. 54; 1 Shear. & Red. on Neg., sec. 114.

The court gave at plaintiff's request instruction "G," and the giving of this instruction is assigned as error. This instruction told the jury, in effect, that although Blanford knew of the defendant company's failure to provide its switches with lights, and that such failure or neglect was the proximate cause of the injury to him, this knowledge on the part of Blanford of the company's method of doing business would not estop the plaintiff from recovering in this action, but the jury might consider such knowledge along with all the evidence in the case in determining whether Blanford used ordinary care for his own safety in approaching the switch, and while performing any of his other duties before and at the time of receiving the injury complained of; and to this instruction the court added, "and if they believe from the evidence that said George T. Blanford failed to use such ordinary care at that time, then he was guilty of contributory negligence, and the jury must find for the defendant."

In view of the fact adverted to, that there is no evidence of contributory negligence on the part of Blanford, this instruction was plainly more favorable to the defendant company than it had a right to expect. On the first proposition contained in the instruction, it was, for the reasons we have stated in con-

nection with instructions "H" and "I," not erroneous.   If it were a fact that there was evidence tending to prove contributory negligence on the part of Blanford, still the instruction would be without error, because, as given, it properly submitted the question as one of fact to the jury, in accordance with the decision of this court in *N. & W. Ry. Co.* v. *Cheatwood, supra.*

The next three assignments of error may be considered together.   They relate to the action of the court in permitting the plaintiff to prove that switch lights are used on other portions of the defendant company's railroad, and by two other railroad companies operating in the State of Virginia.

While this court has maintained in *Southern Ry. Co.* v. *Mauzy,* 98 Va. 694, 27 S. E. 285, and *Richmond Locomotive Works* v. *Ford,* 94 Va. 627, 27 S. E. 509, the proposition that "a party should not be adjudged negligent for not conforming to some other method believed by some to be less perilous," that is not the question presented here.   In the cases just mentioned, each of the defendants had adopted methods for conducting their business, and there was no evidence that at other places they themselves used another and a safer method, but it was sought to show that the instrumentalities used by other parties to do the same work were better and safer than the instrumentalities used by these defendants.   In other words, it was sought to institute a comparison of the degrees of prudence involved in the use of one appliance instead of another, or the adoption of one method instead of another.   In the last of these cases named it was said: "A witness having sufficient knowledge may testify as to the general practice of machine shops in moving such wheels, and the comparative safety of different methods, but it is not competent to show that the different method of another shop is better than that of the defendant."

In the case at bar, the defendant company used no switch lights on its Atlantic and Danville Division, and the evidence

here objected to was introduced for the purpose, not of making a comparison, but of showing the fact that the appliance in question was in use, not only by other employers in a similar business, but by the defendant itself.    As we have remarked, it is a matter of common knowledge, of which courts will take judicial notice, that the maintenance of switch lights along the line of a railroad operated for the purpose of carrying passengers and freight, like the maintenance of gates and gate-keepers at grade crossings of railroads, tends to promote safety.    It was, therefore, a proper question for the jury in this case whether or not it was the duty of the defendant company to have maintained switch lights along the line of its Atlantic and Danville Division, and whether the failure to do this at the switch here in question was the proximate cause of the injury to Blanford.

In *Jones* v. *Kansas City, &c., R. Co.,* 77 S. W. 890, 33 Am. & Eng. R. Cas. 364, the Supreme Court of Missouri said: "The fact that there was no derailing switch there was not, *per se,* negligence, and it was not so treated by the court, since the law imposes on the master no higher degree of care than that which it denominates 'reasonable'; it does not require him to furnish absolutely safe or even the best known appliances.    Yet when his conduct in this respect is on trial it is proper for the jury to know what appliances are in common use in this kind of business."    To the same effect is *Smith* v. *Fordyce* (Mo.) 88 S. W. 879; 39 Am. & Eng. R. Cas. 378.

In *Frankford, &c., Co.* v. *Railroad Co.,* 54 Pa. St. 345, 93 Am. Dec. 708, the court says: "When he (the presiding judge in his instructions to the jury) spoke of the stacks in the ordinary use of the leading railroad companies he referred to their practice, not as a rule of decision, but as a matter of evidence, assisting the jury to judge what sort is ordinarily safe."

In *R. & D. R. Co.* v. *Norment,* 84 Va. 167, 4 S. E. 211, 10 Am. St. Rep. 827, in speaking of signal flags which the com-

pany had failed to provide, the opinion says: "The company recognized the necessity for them before the injury, for they used them before the injury in the Manchester yard."

In *Hoyt* v. *Jeffers,* 30 Mich. 181, the action was brought to recover damages of a mill owner for the destruction of the plaintiff's buildings by fire communicated by sparks emitted from the mill's chimney, and it was held that evidence as to the use and effect of spark catchers on steamboats and locomotive smokestacks, and upon iron smokestacks of mills of the character of the mill there in question, was admissible; that the proprietor of such a mill so situated is bound, in adopting means to check the flow of sparks, not only to adopt means calculated to avert the danger, but the means which, in the progress of science and improvement, have been shown by experience to be the best, unless it be some recent invention, not generally known or unreasonably expensive; and that a charge to the jury in such an action, that if the erection and operation of defendant's mill endangered the plaintiff's property, it was the duty of the defendant, in so erecting and operating it, to use such precaution and such means to lessen the danger and prevent the injury as a prudent man, conversant with the business and the danger and all the surroundings, would have used, and that if he fell short of this, or operated his mill with less care and caution than a prudent man would use under such circumstances, and a loss thereby accrued to the plaintiff, he would be liable, is proper.

The effect of the decision in *Bennett* v. *Long Island R. Co.,* 22 N. Y. App. Div. 25, 47 N. Y. Supp. 258, is that the duty rests upon the company operating a completed line of railroad, however short, for the purpose of traffic and travel, not only to keep the switch at a side track locked, but to provide a signal target on the switch—this because it is a reasonable requirement

for the protection of the employees of the company and the traveling public.

In section 461, 1 Wigmore on Evidence, the distinction is drawn between the use of facts as to the custom and usages of others conducting a similar business, and their use as involving a standard of conduct in substantive law. He says: "The distinction is in itself a simple one. The conduct of others evidences the tendency of the thing in question; and such conduct . . . is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse. But this is only evidence. The jury may find from other evidence that the thing was in fact dangerous, defective, or the reverse, and that its maintenance was or was not negligence, in spite of the above evidence. Meanwhile the substantive law tells them what the standard of conduct for negligence is; and this standard is a fixed one, independent of the actual conduct of others. To take that conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper. The conduct of others, then, is receivable as some evidence of the nature of the thing in question, because it indicates what is the influence of the thing on the ordinary person in that situation; but it is not to be taken as fixing a legal standard for the conduct required by law. This distinction is patent enough, but it is sometimes judicially ignored. Such evidence is sometimes improperly excluded on the erroneous supposition that the mere reception of it implies that it is to serve as a legal standard of conduct." Further on the same author says: "Facts rejected under the former (that is, the rule as to legal standard of conduct) may nevertheless be admissible under the latter (that is, the rule of evidence.) The opinion rule may forbid direct testimony by a witness upon care, prudence, reasonableness, safety, or skill, of the conduct or the place or the machine in issue; but

that rule does not affect the present use of specific instances of conduct as circumstantial evidence."

The distinction there drawn by the learned author is well preserved and guarded by the instructions given by the court in the case at bar. We need not, however, pursue the discussion of this subject further, because under another well settled rule the defendant company cannot avail itself of the benefit of the exception to the introduction of this evidence. After the exceptions were taken the defendant company proved by its own witnesses that it had a good many of its own lines equipped with these signal lights; that the main line of the Atlantic Coast Line is equipped with signal lights; and that they were also used on the Seaboard Air Line.

"Where on a trial a party takes a step or adopts a course directly inconsistent with an exception previously taken by him to some ruling of the trial court, he will be deemed to have waived such exception and cannot take advantage of it upon an appeal or writ of error." 2 Cyc. 739.

"If a party objects to the introduction of evidence which is admitted, and afterwards introduces the same evidence himself, it is not ground for reversing the judgment, although the evidence itself was incompetent." *N. Y. Life Ins. Co.* v. *Taliaferro,* 95 Va. 522, 28 S. E. 879.

On the cross-examination of S. W. Simmons, introduced by the defendant company, he was asked a number of questions as to whether or not he had a short time before this accident made a similar mistake in setting a switch to that which it was claimed he made on the night of the accident, and to this line of cross-examination the defendant company objected; and the action of the court in overruling the objection is assigned as error.

The defendant company had taken the position that the charge of negligence in the declaration, consisting of leaving the switch open or wrongfully set on the night of the accident, could not

be sustained, because its witnesses Simmons and Willard would swear that the switch was properly set by Simmons; and the question here presented is whether or not it was proper, on cross-examination, to show that Simmons was mistaken—in other words, to test the witness' accuracy, veracity or credibility.

Two cases are cited by the defendant company to sustain its contention that the court erred in allowing the plaintiff to pursue this line of cross-examination—viz: *Ellis* v. *Harris,* 32 Gratt. 688, and *McGuire* v. *Middlesex R. Co.,* 115 Mass. 240; but these cases do not sustain the contention. They are wholly dissimilar, as in them it was sought to introduce evidence through another witness as direct proof of the negligence in issue, and not an effort upon cross-examination of an adverse witness to test his accuracy, veracity or credibility.

The circumstances of this case illustrate the wisdom of the distinction that has been drawn between the introduction of another witness to prove that a witness examined in a case had been guilty of conduct inconsistent with his conduct as testified to, and the examination of the same witness on cross-examination to test his accuracy, veracity or credibility.

In *Wheel Co.* v. *Chalkley,* 98 Va. 62, 34 S. E. 976, the opinion says: "The evidence was brought out upon the cross-examination of a witness who had testified in chief that the machinery was in the same condition when exhibited to the jury that it was when the plaintiff was injured. The latter had the right not only to show that this was not true, but, upon cross-examination, had the right to ask any question which tended to test the witness' accuracy, veracity or credibility, as the questions complained of clearly did." Stephens' Dig. Law of Ev., Ch. 16, Art. 129; 1 Greenleaf's Ev., sec. 446.

Chief Justice Shaw, in *Hathaway* v. *Crocker,* 7 Met. (Mass.) 266, states the principles of cross-examination as follows: "In cross-examination an adverse party is usually allowed great

latitude of inquiry, limited only by the sound discretion of the trial court, with a view to test the memory, the purity of principle, the skill, accuracy and judgment of the witness, the consistency of his answers with each other, and with his present testimony; his life and habits, his feelings towards the parties and the like; to enable the jury to judge of the degree of confidence they may safely place in his testimony.    The rule is this: that when the question is of this description, relative to a fact collateral to the issue, and not material to it, the answer of the witness must be taken as it is, and other evidence cannot be offered to contradict him."    See also *Worrell* v. *Kinnear,* 103 Va. 724, 49 S. E. 988; *Railroad Co.* v. *Bowles,* 92 Va. 743, 24 S. E. 388.

It will be observed that the cross-examination of Simmons related to the first charge of negligence made in the declaration—namely, that he left the switch open—and the contention is that his testimony must be accepted as true; that he could not possibly be mistaken.    Therefore, leaving entirely out of view the interest he had in a finding that he had not left the switch open, the plaintiff would have been put in a very embarrassing position indeed if she had been denied the benefit of cross-examination for the purpose of testing the witness' accuracy, veracity and credibility.    That she had this right seems to be clearly settled by the authorities.    In addition to those already cited, we need mention but a few others.    They are reviewed in 2 Wigmore on Ev. at considerable length.    At section 979 the author cites with approval several cases sustaining the view of the court below in this case.    Among them are *People* v. *Jackson,* 3 Park. Cr. (N. Y.) 395, and *Oxier* v. *U. S.,* 1 Ind. T. 85, 38 S. W. 331.

In the first of these cases it is said: "Generally the conduct of a witness in matters disconnected from the subject of the trial, being irrelevant, cannot be given in evidence.    The ob-

jections to admitting such evidence are that it raises collateral issues, and that the party against whom it may be offered would generally be taken by surprise and not be prepared to meet it. It is very desirable that the inquiries upon a trial should be confined to the issues actually joined between the parties. They attend to try those only; the attention of the jury is or should be exclusively directed to them, and not diverted to other and irrelevant matters which have a tendency to confuse their minds, and an investigation into collateral matters would protract issues into inconvenient and intolerable length. . . . There can be no doubt but that, in ordinary cases, an inquiry addressed to any but the assailed witness as to any particular act derogatory to his character or as to any specific blemish in his reputation should be excluded. . . . However, a fact derogatory to a witness' character may be proved, provided it does not raise or tender a collateral issue. . . . A witness may be asked if he has not perpetrated some offense, or been guilty of some moral obliquity, which would, if true, impair the weight of his evidence. . . . That would not, however, raise any issue for trial, as, whatsoever his answer might be, the party asking the question could not controvert it."

In the last cited case, the opinion says: "There is a clear distinction, recognized by the authorities cited above, between impeaching a witness by proof of facts which discredit him, made independently of his examination, and by proof of the same facts elicited in his cross-examination. Proof of particular facts tending to impair his credibility, made independently of his own examination, is excluded for the reason that its admission would engender a multiplicity of collateral issues, and would frequently surprise a witness with matter which he could not be prepared to disprove. But these reasons do not apply to his cross-examination as to the same facts, because the

witness, better than any one else, can explain the impeaching matter, and protect himself to the extent that explanation will protect him; the cross-examining party being bound by his replies."

It is, of course, not meant there that the cross-examining party has to accept the answers of the witness as true, but merely that he cannot pursue the inquiry further by the introduction of other evidence, and has to leave the inferences to be drawn from the answers of the witness or their effect to the jury in connection with the other evidence in the case.

Concluding the review of the authorities on the subject, the learned author (Wigmore), at section 981, says: "The reasons already examined appear plainly to have no effect in forbidding the extraction of the facts of misconduct from the witness himself upon cross-examination. (a) There is no danger of confusion of issues, because the matter stops with question and answer; (b) there is no danger of unfair surprise, because the impeached witness is not obliged to be ready with other witnesses to answer the extrinsic testimony of the opponent, for there is none to be answered, and because, so far as the witness himself is concerned, he may not unfairly be expected to be ready to know and to answer as to his own deeds. Thus, neither of the reasons has any application, and hence, so far as they are concerned, the opponent is at liberty to bring out the desired facts by cross-examination and answer of the witness himself to be impeached.

"One or two not uncommon inaccuracies in expressing this result must be noticed. (1) It is sometimes said that the above objection of confusion of issues is obviated because the witness' answer, if in the negative, 'must be taken for true,' or 'is conclusive in his favor.' This is obviously not correct. The jury is not obliged to take any witness' word as true; and they may

or may not choose to believe this witness on this point. All that can be said, and all that is meant, is that the opponent cannot proceed to prove the alleged fact by extrinsic testimony, and that, if he chooses to ask for testimony on this point from the witness himself, he must accept the chances of the jury believing a negative answer."

These authorities are in harmony with the decisions of this court upon the subject under consideration, and we are of opinion that there is no merit in this assignment of error.

This brings us to the consideration of the case upon its merits. The evidence is conclusive that the setting of the switch for the sidetrack was not the work of a miscreant—in fact, there is no effort to prove that such was the case. Therefore, the switch could only have been set for the sidetrack by some person having a switch-key; and that the switch was used last by the employees of the defendant company about 7 o'clock in the evening preceding the accident resulting in the death of Blanford, when 2d 64 placed some cars upon the sidetrack at Lawrenceville, is not controverted. There is not a single fact disclosed by the evidence showing that a switch-key was in the possession of any other person who could have changed the switch from the condition in which it was left when 2d 64 had departed. It was for the jury to determine whether or not the witnesses, Simmons and Willard, were mistaken in saying that Simmons rightly set the switch for the main track when their train departed from Lawrenceville; and as the testimony of these witnesses is so much impaired by the circumstances, namely, that the switch was wrongfully set, that it was not tampered with by a miscreant, and that no one else had a key with which the switch could have been changed from the condition in which it was left by these witnesses, and the further fact that Simmons admitted, though reluctantly, on his cross-examination, that he had on a previous occasion left this or some other switch open,

which would have resulted in a similar accident to the one in which Blanford lost his life had the train which passed successfully over the switch left wrongfully set been going in an opposite direction, the jury, we think, were warranted in concluding that the switch was left open on the occasion in question, as charged in the declaration.

With reference to the second ground of liability charged, viz., negligence in failing to equip the switch with a signal light: Aside from the consideration of this question upon the ground that it is a matter of common knowledge that the use of a switch light adds to the safety of the employees operating steam railroad trains and the traveling public, the evidence tended to prove not only the necessity for the lights, but that the defendant company knew of the existence of such appliances and used them along its main lines and branch lines where the necessity for their use was no greater than upon its Atlantic and Danville division. Upon this condition of things being shown, we could not say that the jury were not warranted in finding that it was negligence on the part of the defendant company in failing to equip the switch where this accident occurred with a signal light, and that that negligence was the proximate cause of the accident.

We are, therefore, of opinion that upon the whole case the judgment of the Circuit Court should be affirmed.

*Affirmed.*