**HINES et al. v. KELLEY et al.**    (No. 6465.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 1, 1920. Rehearing Denied Jan. 5, 1921.)

1. **Evidence ⬤⟞116—Testimony as to railroad's board to investigate wreck causing injury proper to show witnesses were not volunteers.**

In an action for a railroad employé's death by the derailment of a train, it was proper to permit a witness to testify for the plaintiffs that he was on the ground where the wreck occurred at defendant's instance, and that defendant had given instructions that when derailment occurred a board consisting of its officers and disinterested persons should convene to ascertain the cause; such testimony being proper to show that the witnesses were not volunteers.

2. **Appeal and error ⬤⟞1052(5) — Admitting evidence that railroad company's committee had made report as to cause of wreck killing servant held not prejudicial error.**

In an action against a railroad company for death of a servant, *held*, that defendants were not injured by the admission of testimony showing that their board had investigated the cause of the wreck, where the record discloses no evidence of prejudice or passion on

the part of the jury by which might have been inferred that the report would have been introduced if favorable to defendant.

**3. Appeal and error ⬅216(2)—A more specific charge must be requested.**

Where a charge was correct in so far as it went, if appellants deemed that there were matters omitted which should have been given they will not be heard to complain, where they made no effort to supply the omissions.

**4. Evidence ⬅474(8)—Witness who has frequently seen train pass may testify as to speed.**

In an action against a railroad company for the death of its servant in a derailment wreck, testimony of a witness living near the track that he frequently saw the train pass and observed its speed, and that it was running faster than usual, was properly admitted.

**5. Evidence ⬅539½(1, 3)—Experienced witness held competent to estimate speed of train and proper altitude of curve in track.**

A witness who testified that he had been engaged in railroading a number of years, and civil engineering and maintenance of way work and measuring the speed of trains, was fully qualified to estimate the speed of a train by the scene of a wreck from derailment, so that his testimony that the wreck indicated that the speed was about 45 miles an hour and that the prescribed speed was 40 miles, and as to the proper altitude for the curve where the wreck occurred, was properly admitted.

**6. Master and servant ⬅278(18)—Evidence held to show negligent derailment of train.**

In an action for a railroad employé's death in a derailment, evidence *held* to justify jury in finding that the accident would not have occurred but for defendant's negligence in running the train at an unsafe speed and laying the track improperly.

**7. Death ⬅95(4)—Money given by deceased child to mother measures her loss.**

Where a son gave most of his earnings to his mother, the amount she received from him measured the amount of her pecuniary loss by his death, and it was immaterial how she expended the money.

**8. Master and servant ⬅258(3)—General allegation of negligence causing derailment sufficient.**

In an action for a railroad employé's death by the derailment of train from a cause not known to plaintiff, a general allegation that it was through the negligence of defendants was sufficient, without alleging the negligence of the engineer and manner of construction.

**9. Master and servant ⬅291(4)—Instruction on railroad's duty to furnish "appliances" proper.**

In an action for a railroad employé's death by a derailment, where there was evidence of defective track, an instruction on master's duty in furnishing appliances was proper; term "appliances" including a railroad track.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appliance.]

**10. Trial ⬅260(8) — Refusal of requested charge on matters covered not error.**

In an action against a railroad company for the death of a servant caused by derailment wreck, the court did not err in refusing a special charge on the matter of unavoidable accident, where such matter was placed before the jury in the court's charge.

**11. Appeal and error ⬅1067—Refusal of requested charge not reversible error where not likely to have affected verdict.**

In an action against a railroad company for the death of its servant in a derailment wreck, it was not error to refuse to instruct the jury that if they were unable to determine the cause of the accident they should find for the defendants, where the evidence clearly established that the wreck occurred through excessive speed and track defects, so that it was improbable that the charge could have affected verdict.

**12. Depositions ⬅83(3)—Deposition of mentally incapacitated witness may be suppressed before trial.**

Where the depositions of one mentally incapacitated to testify are taken, they may be suppressed before trial.

Appeal from District Court, Victoria County; John M. Green, Judge.

Suit by Saletia Kelley and another against Walker D. Hines, Director General of Railroads, and the Galveston, Harrisburg & San Antonio Railway Company. Verdict and judgment in favor of the named plaintiff and against the other plaintiff and the defendants, and the defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Proctor, Vandenberge, Crain & Mitchell, of Victoria, for appellants.

Fly & Ragsdale, of Victoria, for appellees.

FLY, C. J. This is a suit for damages instituted by Saletia Kelley and W. G. Kelley, as the mother and father of Claude Kelley, deceased, against Walker D. Hines, Director General of Railroads, and the Galveston, Harrisburg & San Antonio Railway Company, in which it was alleged that Claude Kelley, an employé of appellants, was killed through the negligent derailment of a train of the railway company. The appellants answered by general and special exceptions and general denial. The cause was tried by jury and resulted in a verdict against W. G. Kelley and in favor of Saletia Kelley for $15,000, and the judgment was so rendered.

The facts were sufficient to show that appellants were guilty of negligence in running the train at too high a rate of speed, over a track near or on a curve, by which the train was derailed and Claude Kelley, an employé of appellants and the son of appellees, was killed. W. G. Kelley was the divorced husband of Saletia Kelley, and she depended for her support on her son, Claude Kelley.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] The first and second assignments of error assail the action of the court in permitting W. S. Higgins to testify that the railway company had given instructions that, whenever a derailment of a train involving damages occurred, a board consisting of the superintendent, assistant superintendent of maintenance of way, assistant superintendent of motive power, and two disinterested citizens should convene to ascertain the cause of the wreck, fix the responsibility, and make recommendations, and that such a board was convened on the occasion of the wreck in question. The witness swore as to the personnel of the board, Walter K. Breeden being one of the disinterested citizens who was on the board. The first assignment is long and argumentative, and it and the second, which are grouped, are followed by a statement containing, not only the evidence of Higgins, but of Breeden, consisting largely of questions and answers, argument of counsel, suggestions and rulings of the court, as well as the report of the board of examination, which was not placed in evidence. A statement filled with irrelevant matter, arguments of counsel, and questions propounded to a different witness from the one whose evidence is attacked can have no salutary effect, but is confusing and should meet with scant consideration. The only point presented by the assignments is: Was the evidence of Higgins, as hereinbefore stated, in regard to the organization of a board, permissible? We think it was. The evidence of Breeden and Higgins was not objected to as to what they ascertained on the ground where the wreck occurred, and this testimony was relevant and proper to show that the witnesses were not volunteers, but had gone to the place at the request of appellants to ascertain the cause of the wreck. The officers of appellants formed two-thirds of the committee or board. It was the board of appellants, and no valid reason is assigned in the brief for the attempt to keep secret the fact that the report was made. The report, had it been admitted, could not be classed as analogous to a coroner's findings as to causes resulting in death. The coroner's inquest is excluded on the ground of res inter alios acta, but the report of appellants' board would not come under that designation. Appellants were parties to the investigation made by them through a board of their own appointment. None of the arguments used by Judge Gaines in the case of Boehme v. Woodmen of the World, 98 Tex. 376, 84 S. W. 422, would apply to the report of the board of appellants' own creation. However, the question of admission of the report is not before this court, and cannot be passed upon. We merely hold that it was not improper to permit Higgins to testify that he was upon the ground where the wreck occurred at the instance of appellants, and in company with others sent there by appellants. None of the authorities cited by appellants has any bearing on the point at issue.

[2] It is not apparent that appellants were injured by the admission of the testimony. If the jury might have drawn the inference that the report would have been introduced in evidence by appellants, had it been favorable to them, so the jury might have presumed that appellees would have offered it in evidence, had it been favorable to them. The record discloses no evidence of prejudice or passion on the part of the jury.

[3] The third assignment of error is overruled. The charge of which complaint is made was undoubtedly correct so far as it went, and if appellants deemed that there were matters omitted which should have been given, they should have made an effort to supply the omission. This is settled by numerous decisions.

[4] It was permissible to permit the witness Anderson to testify that he was in the vicinity of and saw the train pass and that it was running a little faster than usual. The witness lived not a great distance from the track and frequently saw the train pass and observed its speed many times, and it was not improper to allow him to state that it was running faster than usual. A strong preponderance of the evidence sustained the opinion of the witness. Witnesses not experts are permitted to testify as to the speed of trains. Elliott on Evidence, § 683; Merchants' Transfer Co. v. Wilkinson, 219 S. W. 891. The fourth assignment of error is overruled.

[5] Higgins testified that he had been engaged in "railroading since 1907, in civil engineering and maintenance of way work, measuring the speed of trains," etc. This was not contradicted and fully qualified the witness to testify that he could estimate the speed of the train by the scene of the wreck and that the facts indicated to him that the speed of the train was about 45 miles an hour, and that the prescribed speed was 40 miles an hour. The witness was also properly permitted to testify that the proper altitude for the curve where the wreck took place was 2½ to 3 inches. The evidence was properly admitted, and the fifth assignment of error is overruled.

[6, 7] The sixth to the eleventh assignments of error, inclusive, are overruled. The evidence showed that the train was behind schedule time and was running at such a rate of speed that when the engine left the track it ran for 120 to 130 feet on the rails, then turned over and its momentum was so great that it slid for at least 100 feet on the ground. Part of the train was on one side of the track and part on the other. The train was approaching a curve when the engine left the track, and was running at a rate of speed by five miles an hour more

than was permitted by the schedule time. It was a clear case of negligence in running at a rate of speed not deemed safe, in order to make up lost time. The evidence also showed that the track was not laid as it should have been, and the jury was justified in finding that the accident would not have occurred but for these acts of negligence. The evidence was sufficient to show that Claude Kelley was earning from $160 to $180 a month at the time of his death, and that the most of it was given by him to his mother. It does not matter how she expended it, when she got the money from her son. It measured the amount of her pecuniary loss.

[8] In the very nature of things, it was not supposable that appellees could know exactly what caused the derailment. Claude Kelley was dead and his mother was in no position to know the cause of the derailment. She alleged generally that it occurred through the negligence of appellants. Appellees alleged that the derailment occurred either in the manner in which the engine was operated or in the defective construction or maintenance of the track, alleging that the particulars of the negligence of the engineer or manner of construction was unknown to appellees. The allegations were sufficient. Williams v. Railway, 60 Tex. 206; Railway v. Brinker, 68 Tex. 500, 3 S. W. 99; Railway v. Hennessey, 75 Tex. 155, 12 S. W. 608; Jackson v. Cunningham, 141 Ala. 206, 37 South 445; Railway v. Leisure (Ky.) 90 S. W. 269; Railway v. Blanford, 105 Va. 373, 54 S. E. 1; Railway v. Abbey, 29 Tex. Civ. App. 211, 68 S. W. 293; Railway v. Barnes, 42 Tex. Civ. App. 626, 95 S. W. 714.

In the case of Railway v. Templeton, 87 Tex. 42, 26 S. W. 1066, it was held that the same rules as to pleading apply to pleadings by an injured employé as by a passenger. The court said:

"The same reason that exempts a passenger from the necessity of making specific allegations of the particular points in which the machinery was defective apply with full force in this case. The plaintiff was employed in the yards at San Antonio, and not upon this train. When he mounted the car in obedience to the order of the yardmaster, he had no time to examine the brake and ascertain the specific defects in it. * * * He could know the defect was in the brake, but as to the particular defect he could not know. The defendant had all opportunity to know the facts, and it was sufficient to direct its attention to the thing that was defective."

Speaking on the same subject, this court, in Railway v. Crawford, 9 Tex. Civ. App. 245, 27 S. W. 822, 29 S. W. 958, held:

"It is, however, argued by appellant, that the employé has no cause of action against the master except for his negligence, and such negligence cannot be presumed from the accident, and therefore the employé must set up the particular act of negligence more fully than a passenger is required to do. A number of cases are cited to support this position, but none of them tend to uphold the theory that more specific pleading is required from an injured employé than from any other person."

A writ of error was denied in that case. The twelfth, thirteenth, and fourteenth assignments of error are overruled.

[9] The fifteenth assignment of error is overruled. There was evidence tending to show defects in the track at the place of the wreck, and the court did not err in giving the law applicable to the duty of the master in furnishing appliances for the servant. The railroad track is included in the term "appliances." As said in a quotation indorsed by the Supreme Court of Wisconsin, in the case of Johnson v. Ashland Water Co., 71 Wis. 553, 37 N. W. 823, 5 Am. St. Rep. 243:

"The term 'appliances of the business' embraces, not only machinery, premises, and all implements of every kind used in and about the business, but also the persons employed to operate them."

[10] The sixteenth, seventeenth, and eighteenth assignments of error assail the charge of the court and are devoid of merit, and the nineteenth assignment is overruled, because the matter of unavoidable accident was placed before the jury in the court's charge, although not raised by the evidence, and the court did not err in refusing a special charge on that subject.

[11] The evidence clearly established that the wreck occurred through an excessive rate of speed and defects in the track, and it was not error to refuse to instruct the jury that if they were unable to determine the cause of the accident they should find for appellants. The evidence clearly indicated that, if the train had not been moving at a very high rate of speed, the engine would not have left the track, and, if it had, probably the disastrous results would not have followed if the track had not been defective. The court instructed the jury that a verdict could not be rendered for appellees unless they found that the derailment took place through the negligence of appellants as alleged in the petition. It would seem improbable that the verdict of the jury could have been affected by the giving of the special charge. The twentieth and twenty-first assignments of error are overruled.

[12] The twenty-second, twenty-third, and twenty-fourth assignments of error complain of the action of the court in suppressing the depositions of the negro boy, Charles Nichols, a witness for appellants. The motion to suppress was on the ground that the witness was an idiot and belonged to a family of idiots, and consequently that he was mentally incapacitated to testify, not understanding the obligation of an oath. Appellants assume the

position that, if once. the depositions of a person mentally incapacitated to testify are taken, they are not subject to attack, but must be permitted in evidence. It would be an idle ceremony and farcical in the extreme to administer an oath to an idiot or one hopelessly insane, and the liberty or property of the citizen should not be made to depend upon such testimony, and the ·court would be helpless and impotent indeed that could not protect the citizen from such testimony, whether given ·by the witness in person or through depositions. It is not claimed by appellants that if the witness had been presented to testify the court. could not have passed upon his capacity, but they seem to labor under the belief that when once the evidence has been placed in the shape of a deposition it is hedged about with a sacredness that removes the power of the court to protect the litigant from it. We see no reason why it should not have been suppressed before the trial as well as when the deposition was offered in evidence. Being suppressed beforehand gave appellants the opportunity to have the witness present to offer him in person. It did actually occur that the witness was present at the trial, but was not offered by appellants as a witness. The court not only heard testimony as to the mental capacity of the witness before suppressing the deposition, but had the witness before him and thoroughly examined him. The witness was present during the trial, but was not offered as a witness by appellants. If there had been no attempt to suppress the deposition, the witness being present, it was within the discretion of the court to allow the deposition of the witness to be read or not. Railway v. Burnett, 42 S. W. 314; Fire Ass'n v. Masterson, 83 S. W. 49.

The evidence was ample to show that the negro boy was utterly incapacitated to testify, and the court did not err in suppressing the depositions. The witness was not placed on the stand, nor is it claimed in the objections urged to the motion to suppress that the witness was· mentally capacitated to testify; the sole objections being that the depositions could not be attacked before they were offered in evidence.

The judgment is affirmed.