ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, v. WATER-
LOO, CEDAR FALLS & NORTHERN RAILWAY
COMPANY, Appellee.

CONTRACTS: Construction—Ambiguous Clause—Surrounding Circumstances. An ambiguous clause in a contract must be read in the light (a) of the surrounding circumstances and situation of the parties, and (b) of the mutual construction of the parties. So held as to a joint contract between two railway companies for the maintenance of a flagman at a crossing.

PRINCIPLE APPLIED: A steam railway crossed a city street. A city ordinance required the maintenance of a flagman at said crossing. The railway complied. Later an interurban company placed its tracks on this street and across the tracks of the steam railway. The two companies then jointly contracted that, "*whenever the ordinance* of any municipal corporation *shall require* a flagman at said crossing," then the steam railway company should furnish the flagman and pay him, and the interurban would refund one half the expense. No new ordinance was passed, but the old one remained in force. Did the contract mean "*if and so long as an ordinance required a flagman,*" or did it contemplate the passage of a *new* ordinance requiring a flagman? The interurban, when it contracted, knew of the existence of the old ordinance, and that the steam railway was maintaining and paying a flagman in compliance therewith. Both parties intended this should continue. The contract aimed at economy. *Held*, no *new* ordinance was nec-

essary to initiate liability on the part of the interurban company.

CONTRACTS:  Consideration—Adjusting Possible Disputes—Pre-Existing Liability.  The obligation of a *street* railway company, in crossing the tracks of a *steam or commercial* railway company, not to unnecessarily impede transportation on the road crossed, furnishes ample consideration for a joint contract between the parties which aims to settle and adjust disputes which might arise out of said obligation: i. e., a contract equitably adjusting the expense of a flagman at said crossing. And ample consideration exists for the latter contract, even though, at the time of contracting, the pre-existing company had for years maintained a flagman at said crossing, in obedience to a city ordinance so requiring.

CONTRACTS:  Consideration—Joint Sharing of Expense of Performing Mutual Legal Duty.  A contract providing for the joint sharing of the expense of performing a mutual legal duty is supported by a sufficient consideration: i. e., the expense attending the maintenance of a flagman on a city street at the crossing of two railways.

CONTRACTS:  Consideration—One Proviso Furnishing Consideration for Another.  One provision of a contract may furnish adequate consideration for another provision which, standing alone, may appear to be without consideration.

*Appeal from Black Hawk District Court.*—FRANKLIN C. PLATT, Judge.

SEPTEMBER 26, 1917.

REHEARING DENIED JANUARY 15, 1918.

ACTION at law to recover half the costs of maintaining a flagman at the crossing of the appellant road by that of appellee. The demand is based upon a contract entered into between the two companies. The appellee defended that it was a condition precedent in the contract that the contribution should be made only if and after the city of Waterloo by ordinance required a flagman at that crossing, and that the condition precedent has not occurred. A further defense was that the contract was wholly without considera-

tion. The trial court found for the defense of want of con-
sideration in terms, and possibly rested its decision solely
on that defense. Be that as it may, judgment went against
the appellant, and it appeals.—*Reversed.*

*G. W. Dawson, Helsell & Helsell, Blewett Lee,* and
*W. S. Horton,* for appellant.

*Pickett & Swisher,* for appellee.

SALINGER, J.—I. Premising that the
1. CONTRACTS:    italics are placed where they are in the brief
   construction:
   ambiguous     of appellee, we have to say that the contract
   clause: sur-
   rounding cir- between the parties provided that, "whenever
   cumstances.
· * * * the ordinance of any municipal
corporation (of the state) *·* *·* *·* *shall require* a flag-
man or flagmen *to be stationed at said crossing,* or shall re-
quire the *said crossing* to be protected by an interlocking
and derailing plant, or any safety appliance other *than those
provided for in the preceding paragraph hereof,* then the
Central Company shall employ and pay the wages of any
such flagman or flagmen, and the Electric Company repay
half."

The appellee says that this fixes a condition precedent.
and that the plaintiff was rightly defeated, because at no
time has any such requirement been made by any such
ordinance. On investigation, it is found that the city of
Waterloo did pass an ordinance or ordinances, requiring a
flagman at a point where the appellee's road has crossed the
road of appellant ever since the contract between them was
made. One defense seems to be that this requirement was
made *before* the parties contracted; that such ordinances
were passed before appellee crossed the line of appellant.

It appears without conflict that, earlier than the time at
which these parties contracted, the Central was by ordinance
required to place a flagman at a point where it then crossed
and still crosses one of the streets of the city. When this

ordinance was passed, the road crossed nothing but a street: that is to say, the appellee road was not then crossing the tracks of the Central road. But that ordinance stands unchanged, and appellee road is crossing the Central at this point. It appears, further, that, ever since the parties made the contract, the Central has paid for the services of a flagman at that point as it did before said contract was made. In other words, ever since the parties contracted, an ordinance has required placing a flagman at this crossing, and such a flagman is kept there, and has been wholly paid by the appellant road. As we gather it, the response of the appellee is that the ordinance, so far as appellee is concerned, deals only with the situation that existed when the ordinance was passed, at which time appellee was attempting no crossing; that the contract is binding only in case an ordinance be passed subsequent to the making of the contract, which ordinance requires a flagman at the crossing; and that, as no such ordinance has been passed, a condition precedent has failed. In another place, the appellee argues (and in that he is sustained by *Baltimore & O. S. W. R. Co. v. Cincinnati L. & A. Elec. St. R. Co.*, 52 Ind. App. 639 [99 N. E. 1018], and *South East & St. L. R. Co. v. Evansville & Mt. V. E. R. Co.*, 169 Ind. 339 [82 N. E. 765]), that, when a railroad builds its tracks across a street, it is bound to assume that a street railway may thereafter be operated upon such street. While this is an argument for the claim, also made, that the contract is without consideration, because crossing by the street railway is only a burden which the Central Railroad assumed with the grant permitting it to cross the street, it is none the less conclusive against the claim that, as the ordinance passed before the contract was made, it is not to be taken into consideration, because, when passed, no street railway was operating. If appellant must assume that street railways might later be operated, it is equally reasonable that the makers of the ordinance ad-

dressed themselves to existing conditions no more than to that future contingency. The view of the trial court on this head is clearly indicated by the fact that it permitted testimony to show that, on street crossings where appellee has no line, ordinances as well require a flagman. We are of opinion that it is not decisive of the rights of the parties that the city has never passed an ordinance which *in terms* seeks to protect the crossing where defendant road crosses that of plaintiff.

But appellee may well claim that, even though the time at which the ordinance was passed is in this case immaterial, as an abstract proposition, the time of the passage could be and was made material by contract. And so we have the question whether the contract does this. In words, the contract is that appellee is to contribute whenever an ordinance *"shall require* a flagman *to be* stationed." If all before us exhibited no more than those words, we might agree that no ordinance passed before the contract was made initiates liability to make contribution. But that is not all we have. We have the surrounding circumstances, and some light on how the parties, if acting in reason, have construed the contract. Both parties knew an ordinance existed which required a flagman to be stationed where one road was to cross the other. Both knew a flagman was there, that the Central had paid him, and both intended that this should continue. The vital thing both parties aimed at was an arrangement by which one flagman would do the work in which both companies were interested, to have that work done by one man instead of two, and the expenditure for the one divided. The central object was economy on part of both in their operation. With that object in view, it is utterly unreasonable to claim that the appellee road was not controlled by the desire to save expenditure, and instead made it the turning point that this desired economical arrangement dealt only with a guard who should be placed there

when, if ever, a new ordinance requiring it was enacted after the contract was entered into. It was never intended that contribution should depend upon such new ordinance. What the rights of the parties would be if there never had been an ordinance, or if the one in question had been repealed before the contract was signed, and no other passed since, we have no occasion to determine. There was such an ordinance when the contract was made, and ever since it has required a flagman to be placed and maintained at the very spot that the contract deals with. On every day after the contract was made, the flagman who was kept there by the Central was a flagman required by ordinance, and it is utterly immaterial, and must have been thought so by the parties, that there was not a new ordinance requiring what was already required. We hold that the words found in the contract, that "whenever * * * the ordinances * * * shall require a flagman to be stationed at said crossing," were mutually intended and understood to be, "if and so long as ordinance so required." The appellant should not fail because a contract condition precedent has not been fulfilled.

II. The court found the contract was without consideration. In support, it is argued that, as the Central Company was already under obligation to maintain a flagman, the appellee road had the right to cross without agreeing to pay half the expenditure on this head; that the contract accomplished nothing except to give to appellee what it had without the contract, and bound it to pay the appellant for what appellant was obliged to do without payment. There seems to be some begging of the question involved in all this. The appellee had the right to cross; but does it follow that such right was absolute, or that it could be exercised without making compensation?

2. CONTRACTS: consideration: adjusting possible disputes: pre-existing liability.

On the original submission, there was no suggestion

that the contract was without consideration, because one
party was a street railroad, and not a steam railroad. While
it was strenuously insisted that the contract was without
consideration, there was no claim made that consideration
would be present, were the defendant a steam railroad. Ow-
ing to this condition of the record, some argument got into
the former opinion which deals with the two as being alike
affected by Section 2020 of the Code of 1897. It is now urged
upon us that we have gone counter to the claimed rule that
a street railroad cannot exercise the power of eminent do-
main, and may cross a steam or commercial railroad upon
a public street without instituting condemnation proceed-
ings or paying damages therefor. We had no occasion to
deal with such a point here, and have not given a decision
upon it in the instant case. That this is so is made mani-
fest by the fact that the crossing had been fully effected,
with or without the aid of condemnation, before the instant
case was instituted. What it was intended to hold, and
what we still think the opinion does hold, is that, though no
compensation can be exacted of the street railroad for the
privilege of crossing, that no matter whether it be a steam
railroad or a street railroad that crosses another railroad,
the crosser must bear the expense of that which is necessary
to prevent undue interference with the road already con-
structed; that, while nothing need be paid for the privilege
of crossing, he who crosses must restore the property crossed
to substantially the same condition that it would have been
in had no crossing been perfected, subject, of course, to the
necessary changes effected by the crossing; that, where
there is unnecessary interference with the use of the rail-
road crossed, a court of equity may prescribe the method
and conditions under which such crossing may be made.
We invoked said statute provision in support of this argu-
ment. It needs no support from statute. The question is
not whether a street railroad must pay compensation for the

right to cross, but whether an agreement which settles what shall be paid for restoration or unnecessary interference is supported by a consideration.

If such conditions as this surround and attach to the right to cross, legitimate disputes can arise for the determination by courts as to whether needless interference is threatened, upon what is just compensation, and upon what the crosser should do. Certainly, a contract which settles and obviates such disputes may not be impeached for want of consideration. The very cases upon which appellee relies, and which, by confusing the existence of an easement with regulations of its use, hold that permitting the crossing is not a consideration, recognize, when they depart from this confusion, what the true rule is. It is said in *Baltimore & O. S. W. R. Co. v. Cincinnati L. & A. Electric St. R. Co.,* 52 Ind. App. 639 (99 N. E. 1018) :

"But the kind and character of the crossing, materials, appliances and equipments to be used in its construction or maintenance, are the proper subject of contract. This is so, for the reason that companies owning such intersecting lines are charged with certain duties relative to the safety of the street from defects occasioned by such crossing; and the rights and duties of each with reference thereto, as between themselves, may be specially defined by contract."

The contract itself provides for furnishing materials and other things to be done by the appellee "to the satisfaction" of the Central Company. The appellee follows cases like *Baltimore Railway,* supra, in assuming that the parties to this contract elected to make the right to cross the sole consideration for the contract, and upon this assumption is based the claim that such election is binding, and that there may be no inquiry into what the actual consideration was. The flaw lies in the assumption. It does not follow that, because a contract deals with the crossing of one

railroad by another, so that such crossing is the subject of the contract, that, therefore, there is no consideration unless the permission to cross furnishes it. It may be assumed that the naked promise to cross furnishes no consideration. It does not follow that, where there is proper occasion to differ as to what shall be done or not done in creating and operating a crossing, that a contractual settlement of those differences will not support an agreement for contribution, even though the naked permitting of crossing would not furnish it. As said, this disregards the distinction between the naked right to cross—the *existence* of an easement—and the right to contract concerning the use of that easement. Concede that exercising an existing right to cross a railroad track affords no consideration. But all that does not get us far. Where one has a right of passage over the lines of another, he is not required to pay anything because he finally determines to put his grant into active use, even though that use, reasonably exercised, may interfere with the rights of the fee owner. But suppose, though there be no question on whether the easement exists, there is a fair question whether something proposed in connection with the use is a needless interference. May not the parties stipulate effectively that that question shall be set at rest without contest, in consideration of the payment of a stipulated sum? Suppose both have the like duty concerning paving or fencing of a right of way which constitutes the easement of one, may not the two agree validly that one shall do all of it and then be repaid half of the expenditures? Suppose the use of a conceded easement will cast an additional burden upon the owner of the fee, not contemplated in the grant of the easement, nor justly inferable from the grant, may not that additional burden be the subject of contract adjustment? Suppose the holder of the easement is under certain obligations, and it becomes a fair question what is the proper manner of fulfilling these,

may there not be a valid agreement which, in consideration of accepting a certain performance of this obligation, shall relinquish all right to insist that such obligation has not been discharged? If all this is not persuasive, and there was nothing for the parties to deal with save an absolute and unlimited right to cross, why make this elaborate, or any, contract?

In *Richmond Union Pass. R. Co. v. Richmond F. & P. R. Co.*, 96 Va. 670 (32 S. E. 787), there was an agreement which included keeping a watchman on the crossing of the respective tracks of the parties on a city street, and to pay the expenses equally. It was defended, as here, that this contract is without consideration, because:

"The electric company had the right with or without its consent, to cross its tracks, authority to do so having been conferred by the city of Richmond."

The court says it concedes this, but notwithstanding, it takes judicial notice that, when a crossing occurs in the streets of a city, the danger of crossing railways at grade is greatly enhanced, and that "it was therefore for the mutual convenience and safety and protection of the two companies that some arrangement should be made by which the danger incident to the situation might be diminished, if not wholly obviated." And that such "as gates and watchmen have that tendency." The trial court says this case is not authority, because in it it was undisputed that the gates and flagmen were for the mutual convenience, safety, and protection of the two companies; while here it is undisputed that the necessity for a flagman was not increased by reason of the defendant company's line across the track of plaintiff, as it was the rule of defendant, and its invariable custom, to stop its cars and flag the crossing of plaintiff before proceeding to cross. We think the distinction is not well made, for reasons presently to be stated.

It appears in testimony, to which an objection was sus-

tained after it was given, that there are instances when the employees of appellee would have crossed, if the flagman had not flagged them. Also, that the employees of appellee did not stop when he did flag them. Testimony was admitted, over objection of appellant, tending to show that appellee placed no reliance on this flagman, and took its own precautions, and that the only use there is for the flagman is to guard for the Central.

The ultimate argument is that there is no consideration, because no new burden was placed upon the Central road, and that, if it assumed one, it was not availed of by the appellee.

It is perfectly clear the parties contracted on the theory that the Central was doing something which would insure greater safety in the operation of the appellee road. There is a provision that, until an interlocking and derailing system, or some other safety appliance which will permit the safe operation of cars across the crossing without stopping shall be put in operation, no cars of the appellee company shall cross without first stopping a stated distance from the tracks of the Central, and being signalled to pass over by an employee of the appellee company, standing on the tracks of the Central Company. The contract makes the one flagman the employee of both. There is another which concedes that appellee must do something to avoid interference which will assure the precedence of the older road, and enable it to run its trains without stopping. Even as against the public, the steam railroad had precedence in passing. *Evansville & T. H. R. Co. v. Berndt,* 172 Ind. 697 (88 N. E. 612, at 614) ; Code Supplement, 1907, Section 2033-e; *Baltimore & O. S. W. R. Co. v. Cincinnati L. & A. Electric St. R. Co.,* 99 N. E. 1020. The statute implies there is a new danger to guard against, and that a new burden on part of someone must be assumed when an interurban railway crosses the tracks of a steam railway at grade. It provides that

the steam railway shall have the right of way, and how the interurban railway shall safeguard its own operations. Code Supplement, 1907, Section 2033-e.

Though it was, in a way, held in *Baltimore & O. S. W. R. Co. v. Cincinnati L. & A. Electric St. R. Co.,* 52 Ind. App. 639 (99 N. E. 1020), that the new crosser does not enhance danger or burden, we must be controlled by our own statute on that point, and by its interpretation. And we find, in *City of Council Bluffs v. Illinois Cent. R. Co.,* 158 Iowa 679, in effect, that crossing a steam railroad with a street car line justifies ordinances which demand guards; and we are not agreed with appellee that all this case decides is that a city may require a railroad company to maintain gates and gatemen at such crossing at its own expense, and that, therefore, there is no consideration for the promise of appellee to pay part of the expense.

3. CONTRACTS: consideration: joint sharing of expense of performing mutual legal duty.

With the claim that the ordinance does not address itself to the situation now existing out of the way, the appellee is as much bound to employ a flagman at the contract point as is appellant. Why is an agreement to be relieved from this on part payment for the services of a sufficient guard, an agreement unsupported by consideration? While the fact that one kept a flagman would not obligate the other to contribute, that by no means establishes there is no consideration for an agreement by which two parties, each under obligation to have a flagman, agree to employ one jointly and to pay him jointly.

### 2-a

4. CONTRACTS: consideration: one proviso furnishing consideration for another.

Under the contract, the object was to accomplish a crossing, and part of the consideration only was the maintaining a flagman by the Central and its paying him. But it does not follow that, because a suit on the contract is for no more than the contribution provided for

in the contract, that the question of whether there is consideration is limited to an inquiry whether keeping and paying the flagman is sufficient consideration. Though the suit is on one provision of the contract, when it comes to the question of whether that provision may be enforced against the claim that it has no consideration to support it, the other covenants of the same contract may furnish the consideration to sustain the only covenant sued upon. One agreement is that this flagman is to be a joint employee. Without that contract, the appellee had no right to control him, had no voice in what he should be paid, had no right to discharge him. The naked provision, giving it all these rights, sufficiently supports the promised contribution. We do not see how *Chicago & N. W. R. Co. v. Sac County,* 142 Iowa 607, at 612, helps appellee. In it, the point is a claim of the railroad company that the statute provision, "that the costs of constructing the improvement across its right of way shall be considered as an element of its damages," includes the cost of building a new bridge; and we held that the statute should not be so construed. We are constrained to hold that the judgment below must be—*Reversed.*

PRESTON, C. J., LADD, EVANS, and GAYNOR, JJ., concur.