ILLINOIS CENTRAL RAILWAY COMPANY, Appellant, v. WATER-
LOO, CEDAR FALLS & NORTHERN RAILWAY COMPANY et al.,
Appellees.

RAILROADS: Construction — Crossings — Interlocking Switches.
1  The provision in Sec. 2063, Code, 1897, for installation of inter-
lockers at railway crossings, is not applicable to a crossing
of a steam railroad track by an interurban track upon a city
street, but such a crossing is under Sec. 2033-e, Code Supp.,
1913, giving the steam railway the right of way at such cross-
ings, and making it mandatory upon the interurban company to
stop its cars before entering upon the crossing until it has
sent a servant or guard ahead to make sure it is clear and safe.
This is the full measure of the duty of the interurban company,
and rebuts any presumption or inference, and there is no duty
upon the interurban company to interlock such crossings.

RAILROADS: Construction—Crossings—Interlocking Switches. Sec.
2  2063, Code, 1897, as to interlocking switches at railroad cross-
ings, has no application to a crossing of a steam railroad by
an interurban railroad, and therefore is not repealed by impli-
cation by Sec. 2033-e, Code Supp., 1913, which defines for the
first time the duty of an interurban company at such a cross-
ing.

RAILROADS: Construction—Crossings—Kind or Pattern of Cross-
3  ing. It is not within the province of the courts to prescribe and
compel the adoption of any particular kind or pattern of rail-
way crossings, and if, when installed, it is not reasonably fit
or suitable for the service required, a remedy may be sought
at the hands of the courts, or possibly from the board of rail-
way commissioners.

*Appeal from Linn District Court.*—F. O. ELLISON, Judge.
JULY 10, 1919.

THE opinion states the case.—*Affirmed.*

*Helsell & Helsell* and *Grimm, Wheeler & Jay,* for ap-
pellant.

*Pickett, Swisher & Farwell, Barnes, Chamberlain &
Hanzlik,* and *John A. Reed,* for appellees.

WEAVER, J.—The plaintiff's petition, in its substituted and final form, alleges that, for more than ten years, it has owned and operated a railway system extending through several states, and that one of its lines is constructed into and through a part of the city of Cedar Rapids, and across a public way known as North Twelfth Street, over which line it is and long has been doing a large and growing business as a common carrier, in both state and inter-state traffic; that, at and before this action, August 24, 1914, the defendant Waterloo, Cedar Falls & North-ern Railway Company was operating an interurban rail-way, doing a general commercial business, from the city of Waterloo into and through Cedar Rapids, and at and be-fore the commencement of this suit, defendant proceeded to establish a grade crossing over the tracks of the plain-tiff company on North Twelfth Street, and, in so doing, acted without right or authority; that, when defendant was about to effect said crossing, plaintiff secured from the trial court a temporary injunction against it, and, there-upon, defendant moved for the dissolution of said order, which motion was, on August 28, 1914, sustained, the rul-ing being in the following form:

"After hearing the pleadings read, and the statements of counsel, and being fully advised in the premises, it is hereby ordered that the defendant be and it is hereby grant-ed permission to put in, construct, and install a proper and sufficient standard crossing over plaintiff's tracks on North Twelfth Street in the city of Cedar Rapids, Iowa, without unnecessarily interfering with plaintiff's reasonable use of its tracks at said point, with the express understanding that all the rights of both parties, as stated and claimed in the pleadings, are reserved to them to be heard and de-termined by the court upon final hearings. And the rights of neither party are in any manner waived by this order,

but may be presented and urged upon the final hearing as though this order had not been made."

The substituted petition further alleges that, after the dissolution of the temporary injunction, it made diligent effort to agree with the defendant for the establishment and maintenance of a suitable and safe crossing at the point in question, such as was demanded in the public interest, as well as the interest of both parties; but that defendant has refused to enter into any agreement for that purpose, but has ever since continued to use said crossing for general railroad purposes and the transportation of both freight and passenger trains, and purposes to continue so to do; and that it has also established extensive transfer and storage tracks, both north and south of the crossing; that the crossing at such point and for such purposes is rendered unsuitable and unsafe, because of curves in the plaintiff's line of road, and obstructions to the view of its employees in handling the traffic over its tracks; and that, by reason of these and other dangers inherent in the peculiar situation, the use of said crossing and track will be and is attended by great peril to life and property, unless the same is guarded by an interlocking switch or other safety devices, as may be directed by the court; and that said common grade crossing is of no benefit to the plaintiff, and the expense of installing and maintaining such interlocker or other safety device should be borne in its entirety by the defendants.

On this showing, plaintiff prays a decree requiring defendant to install an interlocking switch at said crossing at defendant's cost for installation and maintenance, or for such other protection of said crossing as shall be adequate to secure its safe use and operation, and for other general equitable relief.

To this petition, the defendants filed a general demur-

rer, which being sustained by the court, the plaintiff elected to stand upon its pleading, and judgment was thereupon entered against the plaintiff for costs.

The main contention of the appellant is that, as the defendant interurban railway company is conceded to be engaged in business as a common carrier of both passengers and freight, after the manner of railroads generally, it is subject to the provisions of Code Section 2063, by which a company desiring to lay its track across the track of another company at grade may be compelled to install an interlocking switch; and that, upon demand therefor by the company whose line is to be crossed, the court has no discretion to deny such relief.

1. RAILROADS: construction: crossings: interlocking switches.

Turning to the statute, we find that the section here referred to, does provide that, in case one railway company desires to cross at grade the tracks of another, and the parties cannot agree upon the terms on which such crossing may be effected, the company whose line is to be thus crossed may, by proper proceeding in court, compel the other to put in an interlocking switch. This statute has never been and could not well be held applicable to the crossing of the tracks of ordinary railways by street railways.

In more recent years, there has come into common use a system of transportation of passengers and freight by railways operated by other power than steam, which are generally spoken of as "interurban roads." In the cities and towns which they serve, their tracks are ordinarily laid in the public streets after the manner of street railways, and under conditions imposed by franchises granted by such municipalities. Within the city limits, they may or may not serve the public as ordinary street railways; but on their extended lines beyond the municipal limits, their business is carried on very much like that of steam-operat-

ed roads, except as they cater more particularly to the needs of the local public by running their cars at more frequent intervals, and making more frequent stops along the route. They do not restrict their operations to the handling of passenger traffic, but enter into competition with the steam roads for the carriage of freight.

The Waterloo, Cedar Falls & Northern Railway is a road of this class, and we have to consider the question whether it is a "railway company," within the meaning of Code Section 3063, and therefore may be compelled to interlock the crossing which it makes with the plaintiff's track on North Twelfth Street in the city of Cedar Rapids.

Since the enactment of this statute, the legislature has undertaken to define what is meant by the term "interurban railway," and has made certain provisions especially applicable to such roads and companies. By Section 2033-a, Code Supplement, 1913:

"Any railway operated upon the streets of a city or town by electric or other power than steam, which extends beyond the corporate limits of such city or town to another city, town or village, or any railway operated by electric or other power than steam, extending from one city, town or village to another city, town or village, shall be known as an interurban railway."

By the following section, 2033-b, it is provided that the words railway, railway company, railroad, and railroad company, as used in our statute law, are made to apply to and include interurban railways and companies owning or operating them.

Section 2033-d of the same statute empowers cities and towns to authorize or forbid the construction of such railways in their streets, and to prescribe the conditions and regulations for their construction and operation within the city limits. It is there further provided (Code Supplement, Section 2033-e) that:

"Wherever the tracks of an interurban railway cross the tracks of any steam railway at grade the steam railway shall have the right of way and not be compelled to stop its trains and the interurban railway company operating said line shall cause its cars to come to a full stop not nearer than ten feet nor further than fifty feet from such crossing, and before proceeding to cross said steam railway tracks shall cause some person in its employ first to cross said track ahead of said car or cars and ascertain if the way is clear and free from danger for the passage of said interurban cars, and said interurban cars shall not proceed to cross until signaled to do so by such person employed as aforesaid, or said way is clear for such passage over said tracks."

The appellee herein takes the position, and evidently the trial court adopted the view, that the provision for compelling the installing of interlockers at crossings, as provided for in Code Section 2063, is not applicable to the crossing of a steam railway track by an interurban track upon a city street, and that the requirement just quoted, giving the steam railway the right of way at such crossings, and making it mandatory upon the interurban company to stop its cars before entering upon the crossing until it has sent a servant or guard ahead to make sure that the way is clear and safe, is the statutory measure of the duty of the latter company, and rebuts any presumption or inference of a legislative intent to impose upon the interurban company the duty to interlock such crossing.

After considerable reflection, we are persuaded that this is the correct theory of the law, and that to adopt the view of the appellant is to involve the statute in inextricable confusion, if, indeed, it is not to convict the general assembly of enacting legislation without intelligent purpose.

When Code Section 2063 was enacted, the modern sys-

tem of interurban railways was yet to come into being, or was, at least, in its infancy. The language there employed, under the conditions then existing, was clearly applicable to crossings of the tracks of steam operated roads. If that meaning was to be expanded by subsequent legislation to meet or cover other conditions, brought about by the development of other systems of transportation, a simple amendment or statutory declaration of that nature would have been all-sufficient.

Now, the primary purpose of installing an interlocking switch is to permit trains moving on either track to use the crossing without first stopping to bring the trains under control, or to ascertain that the way is clear and safe. It is both a safety and time-saving device. If the legislature had already provided for compulsory interlocking by an interurban company wherever its line intersected the tracks of a steam railway within the city limits, then there was no occasion to impose upon such company the duty to bring its cars and trains to a full stop, and wait while it sent its scout ahead to insure its safe use of the crossing. It is very clear, we think, that the legislature did not recognize the provisions of Code Section 2063 as applicable to crossings of interurban and steam railway tracks upon city streets; and, as that statute is not, in express terms, made applicable to such crossings, and we have not heretofore given it such application by construction, it becomes our obvious duty to say that crossings of this character and the relative duties of the parties pertaining to their use are to be defined and governed by the requirement specified in the later statute, Code Supplement Section 2033-e.

And really, it seems fairly certain that the observance of this statute is a sufficient protection for the appellant against the numerous dangers and inconveniences which counsel think they see in permitting this crossing to be

made. In the first place, appellant is given the first right to the use of the crossing, and it is expressly permitted to operate its trains over it without stopping. The appellee is forbidden to enter upon the crossing until it has stopped its train, and by actual examination found the way clear. What more effective guard against collision and injury would an interlocker afford? Indeed, it seems that the injunction against the use of the crossing by the appellee was lifted on August 28, 1914. The substituted petition was not filed until more than two years later. The decision upon the demurrer and appeal therefrom were nearly four years later; and it is nowhere suggested, by supplemental pleading or otherwise, that the common use of this crossing which counsel describes has developed any of the serious evils against which an injunction was sought, and it is equally plain that such consequences are not to be seriously apprehended in the future.

It may be conceded that, under our statute, Code Section 2020, one railway crossing the track of another is forbidden to unnecessarily obstruct or impede the use of the line crossed; but we find nothing in the petition admitted by the demurrer which can have that result.

Appellant further argues that, to reach this conclusion, we must hold that Code Section 2063 has been repealed by implication by the terms of Code Supplement Section 2033-e.

2. RAILROADS: construction: crossings: interlocking switches.

But this does not seem to be necessary. It may better be said that Code Section 2063 never had any application to a case of this kind, and that the duty of an interurban company with reference to such a crossing on a city street was defined by statute for the first time in Code Supplement Section 2033-e.

The authorities cited by appellant do not require any result in the case other than we have indicated. For ex-

ample, *Anhalt v. Waterloo, C. F. & N. R. Co.*, 166 Iowa 479, deals only with the right of an abutting owner to recover damages for the occupation of a street by an interurban railway; while *Illinois Cent. R. Co. v. Waterloo, C. F. & N. R. Co.*, 182 Iowa 550, turns wholly upon the construction and validity of a contract. Neither these nor any of the other cited precedents need be in any way questioned. The language employed in an opinion deciding any case is to be construed with reference to the facts or the issues the consideration of which called it forth, and it is only as thus limited or explained that it has value as authority.

The demurrer, no doubt, has the effect to admit the facts pleaded as to the location of the crossing and the existence of the obstructions to the view, and the fact that the appellee is using its carrying facilities for the transportation of freight and commodities generally, as well as passengers; but it does not admit the ill consequences which appellant apprehends therefrom, and it was open to the court to say and find that, admitting all the issuable facts in the petition, due observance of the provisions of the law to which we have adverted will sufficiently guard and protect both parties from any serious prejudice.

There is no showing in the petition on which to grant plaintiff's alternative prayer that the court will prescribe the kind of crossing which shall be maintained. There is no specific objection made to the crossing which has been installed and in use for nearly five years, except that it is not an interlocker. Indeed, it is hardly too much to say that the insistence upon an interlocker is grounded less upon any real alleged need of it than upon what appellant conceives to be its right under the statute to compel its installation, without regard to the question of any necessity for it.

It is not within the province of the court to prescribe

and compel the adoption of any particular kind or pattern of crossing. If the one actually installed is not reasonably fit or suitable for the service required, a remedy for that condition at the hands of the court, or possibly of the board of railway commissioners, is always within reach of the party aggrieved. No such state of facts is here alleged or shown.

3. RAILROADS:
construction:
crossings:
kind or pattern
of crossing.

The trial court rightly sustained the demurrer to the petition, and the judgment, entered thereon is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.